**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 30 2012, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO-SE:

**LAWRENCE RAY HOLLEY II**
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LAWRENCE RAY HOLLEY, II, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1005-PC-652 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-0503-FA-6

**July 30, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-petitioner Lawrence Ray Holley II, appeals the denial of his petition for post-conviction relief, raising numerous arguments. Specifically, Holley argues that the post-conviction court erred when it refused to admit Holley's trial transcripts and post-hearing pleadings into evidence and when it denied Holley's requests for a continuance. Additionally, Holley contends that the post-conviction court erred when it denied his claim that his trial and appellate counsel were ineffective and that newly-discovered evidence warranted a new trial. Concluding that the post-conviction court erred when it refused to admit Holley's trial transcripts into the record when it had already admitted them at a previous hearing, we reverse the decision of the post-conviction court and remand for a new hearing.

FACTS

On March 12, 2005, the Lafayette City Police arrested Holley on an outstanding warrant, after receiving an anonymous tip that he could be located at a residence on Rush Street in Lafayette. During a search incident to the arrest, officers found 27.9 grams of cocaine on Holley's person. During the protective sweep of the home, police located five other people inside the residence along with drugs, paraphernalia, and scales.

Based on what was observed during the protective sweep, officers obtained a search warrant for the residence. Upon executing the search warrant, the police officers located a room in the basement that witnesses testified belonged to Holley. The police found pipes for smoking cocaine, plastic baggies, five grams of cocaine in the ceiling tile, digital scales, and 1.8 grams of marijuana in the room.

On March 15, 2005, the State charged Holley with Count I, dealing in cocaine, a class A felony; Count II, possession of cocaine, a class A felony; Count III, possession of marijuana, a class A misdemeanor; Count IV, possession of paraphernalia, a class A misdemeanor; Count V, possession of paraphernalia, a class A misdemeanor; and Count VI, maintaining a common nuisance, a class D felony. At the conclusion of Holley's jury trial on August 4, 2005, the jury found him guilty on Count I, II, III, and IV. The jury found Holley not guilty on Count V and hung on Count VI.

On August 30, 2006, a panel of this Court affirmed in part, reversed in part, and remanded with instructions to vacate Holley's conviction for possession of cocaine as charged in Count II because it violated the prohibition against double jeopardy contained in Article I, Section 14 of the Indiana Constitution. Holley v. State, No. 79A02-0510-CR-966, memo op. at 12 (Ind. Ct. App. August 30, 2006). On September 26, 2006, the trial court vacated that conviction.

On August 16, 2007, Holley filed a petition for post-conviction relief.[1] Holley amended this petition on November 19, 2008. At some point, the post-conviction court granted Holley's request that the public defender withdraw her appearance and that he be allowed to represent himself during the proceedings.

An evidentiary hearing was held on July 2, 2009, and October 1, 2009. At the July 2 hearing, the post-conviction court realized that it had not issued subpoenas as Holley had requested and reset the hearing for October 1 to remedy the situation. Additionally,

---

[1] Holley has not included his post-conviction petition in the record on appeal. We caution Holley to include such documents and filings in the Appellant's Appendix in the future.

3

Holley offered the trial record into evidence, including the transcript and the pretrial and defense exhibits. The State requested permission to examine the documents and noted that while the record contained the certificate asserting that it was a true and accurate transcript, there was no raised seal on any portion of the document. This was the State's only concern regarding the accuracy of the documents. The post-conviction court stated that "[t]he Court, over objection of the state will admit the record of proceedings into evidence." Tr. p. 3. At the end of the hearing, Holley asked that the copy of the record be returned to him; however, the post-conviction court explained to him that "you made them a part of the record so I keep those." Tr. p. 15.

At the October 1 hearing, Holley again sought to enter the trial record in its entirety. The post-conviction court inquired, "has that already been admitted?" Tr. p. 25. Holley responded that it had been admitted at the July 2 hearing. The State intervened, "Judge I disagree with that. I don't believe that it was admitted. And we have not any admission of any evidence." Id.

The post-conviction court requested that the record be checked to see if the trial record had been admitted, but stated, "Mr. Holley I don't show that that was admitted into evidence on July the second. I show that you submitted it." Tr. p. 25. The State again objected "for the reason that [it] does not bear a certification stamp and for the reason that I am not convinced of its authenticity . . . and further points out that the Court may not take judicial notice of it in this proceeding. . . ." Id. at 26. The State further expressed concern, stating "I am not confident it's been with him at the DOC[;] I don't

4

know if there are pages missing, things whited out, things altered. I am not comfortable agreeing to its admission in the condition that it's in and not properly certified." Id. at 27.

Holley responded that "the copy that I submitted is the copy that the public defender's office awarded me and brought me to the [DOC]. It's the only copy of the record that I have." Id. Holley further explained that he had filed a motion with the Court of Appeals requesting that the record be transferred to him for use during post-conviction proceedings but that this motion had been denied because Holley had already been provided a copy by the public defender.[2]

The post-conviction court sustained the State's objection to the trial record even though it had admitted it at the July 2 hearing. When the post-conviction court inquired about Exhibit 2, Holley responded that "if I am not going to be able [to] enter exhibit A which is a copy of the trial record . . . which shows all of the errors that were made and committed then I ask for a – I ask for – I obviously am under educated and would need assistance." Tr. p. 28. The post-conviction court denied Holley's request to continue the hearing.

The post-conviction court admitted Petitioner's Exhibit 2, a statement by the prosecuting attorney in his original trial, over the State's objection. Holley then offered Petitioner's Exhibit 6, an uncertified copy of a docket sheet for a case involving one of

---

[2] On February 18, 2009, this Court issued an Order acknowledging Holley's pro se Verified Motion to Withdraw Record and For Order Instructing Clerk to Transmit Record to Trial Court for Use in Post-Conviction Proceedings. This Court denied the motion, inasmuch as on October 31, 2006, this Court issued an order directing the Office of the Public Defender to copy the record and send a copy to Holley. Accordingly, Holley had received a copy of the record from the Office of the Public Defender.

Holley's witnesses, Robert Webber. The State objected because it was not certified, and the post-conviction court sustained the objection.

Holley also offered Petitioner's Exhibit 33, a docket sheet for a case involving Webber, which was admitted without objection. Holley then offered Petitioner's Exhibit 7A, a plea agreement in a case involving Webber. The State objected because the document was not certified, and the post-conviction court sustained the objection.

Holley then asked the post-conviction court for a continuance, stating that "there's some things that I am not going to be able to prove that I was needing to show today to prove – to support my issues and facts and for me to be granted relief." Tr. p. 34. The State responded that a public defender had been appointed to represent Holley, but he had decided to represent himself. The State also pointed out that Holley had nearly a year to prepare. The post-conviction court denied Holley's motion for a continuance.

Holley then objected because not all the witnesses that he had subpoenaed were present in court. The post-conviction court noted that it was doing everything it could to secure their presence and instructed Holley to continue with his presentation of evidence.

Holley's first witness was Robert Webber. Webber stated that he had been arrested with Holley and several others in a house where Holley's cocaine had been found. Webber testified that he had not been offered a deal in exchange for his testimony at Holley's trial. Rather, Webber had decided to testify at Holley's trial because "I was being charged for something that I was not involved and that you yourself were doing and blaming me for." Tr. p. 39. Webber recounted his attorney's advice that testifying

against Holley could only help Webber's own position regarding the charge of cocaine possession that had been filed against Webber. Webber recalled being granted use immunity for some or all of his testimony at Holley's trial but could not recall the prosecutor in that case making any remarks about Webber's pending charges. Webber expressly denied being granted favors or leniency in exchange for his testimony at Holley's trial.

John Sorenson, Holley's defense counsel, testified that his strategy was to cast doubt on Holley's connection to the residence where the cocaine was found because there were eight people arrested in the residence. Sorenson deposed three individuals who were testifying for the State. Holley offered Petitioner's Exhibits 3, 4, and 5, which he contended were "statements taken by the state's investigator and the prosecutor concerning the state's witnesses that were testifying." Tr. p. 51. The State objected on the grounds that the exhibits were not authenticated and were "covered with circles, things are blacked out, things are handwritten in there are a number of alternations [sic] that do not appear to be part of the original transcript." Id. at 51-52. The post-conviction court sustained the State's objection to all three exhibits.

Sorenson related that the State had disclosed Webber's criminal history during discovery. With respect to an alleged agreement between Webber and the State, Sorenson recounted that he had not received any written agreement but that he expected Webber's testimony to be motivated by the effect which Holley's conviction would have on Webber's own case. Sorenson noted, "that is a usual procedure when there is a drug

7

trial and there are co-defendants or people related if some testify and some don't." Tr. p. 54. Sorenson recalled impeaching Webber at Holley's trial, filing a motion to suppress, and objecting to opinion testimony.

Holley offered Petitioner's Exhibits 13, 14, and 15 into evidence. The State objected to Exhibits 13 and 15, a page from a motion to suppress and a letter from Faith Norton, because they had not been authenticated and were altered by additions and markings. The trial court sustained the State's objection. The State had no objection to Exhibit 14, a letter which Holley had written to the trial court because he authenticated it during the post-conviction hearing. Sorenson's testimony continued, and he stated that if an agreement had been reached between Webber and the State, it would have been memorialized in a plea agreement and disclosed to him.

During Sorenson's testimony, Holley objected because the post-conviction court was "allowing me to proceed further when I don't know what I am doing." Tr. p. 75. Holley unsuccessfully requested leave to obtain an attorney and stated, "I have nothing[;] I can't go any further[,] all I can do is ask for a judgment." Id. Nevertheless, Holley declined to rest and proceeded to present additional evidence.

Holley called Kirk Kerkhoff, who was arrested with Holley at the residence where the cocaine was located. Kerkhoff stated that he was approached by the State about testifying at Holley's trial but that the State's attorneys "made it clear to me . . . that there [are] no special favors being addressed to you today and I clearly stated that I understood

8

that." Tr. p. 80. Holley showed Kerkhoff Petitioner's Exhibits 22, 23, 25, 26, and 27, and Kerkhoff identified them as letters he had written to Holley.

The post-conviction court overruled the State's objections to Petitioner's Exhibits 22, 23, 25, 26, and 27, admitting them into evidence. At this point the post-conviction court expressed its desire to finish the evidentiary hearing, noting that "if we have to reschedule it[,] it's going to be months from now before we can get you back here Mr. Holley. I hope that both of you will assist me in making this go quickly." Tr. p. 88.

Kerkhoff recalled a meeting between himself, the State's attorneys, and his attorney regarding his testimony at Holley's trial. Kerkhoff denied that anyone told him that he "would be facing time" unless statements agree with those of two other witnesses, Webber and Hollinger. Tr. p. 89. Kerkhoff also stated that although there would be no deal regarding his testimony, the prosecuting attorney would tell the court in that case Kerkhoff had cooperated with the State in Holley's trial.

Holley also called C. Wayne Fountain, Kerkhoff's attorney. Fountain noted that he had not brought or reviewed Kerkhoff's file because in "[Holley's] subpoena to me you did not ask me to review the file nor bring anything with me so I am going to – I am going to testify here based on not having reviewed any files." Tr. p. 95. Fountain refused to answer questions about his conversations with Kerkhoff unless Kerkhoff waived the attorney-client privilege. Kerkhoff, who was present in court, declined to waive that privilege.

9

Holley then called Faith Graham, formerly Faith Norton. Graham testified that she did not recall representing him at any time. Graham recognized Karen Sue Moore as one of her former clients, but she could not recall the details of her representation. Holley concluded by stating, "Your honor I have nothing further. I want to object to this whole proceeding. . . . I'm indigent. I'm incarcerated to Miami Correctional Facility. I apologize for my ignorance." Tr. p. 99.

On October 26, 2009, the post-conviction court entered an order denying Holley's post-conviction petition without findings of fact or conclusions of law. On November 25, 2009, Holley filed a motion to correct error. On January 19, 2010, the post-conviction court granted Holley's motion and ordered the parties to submit findings of fact and conclusions of law on or before March 8, 2010. On March 10, 2010, the post-conviction court entered findings of fact and conclusions of law in an order denying Holley's petition for post-conviction relief. On March 11, 2010, Holly submitted draft findings and conclusions. On March 17, 2010, the post-conviction court examined Holley's draft and found no reason to alter its earlier findings and conclusions denying Holley's petition. On April 21, 2010, Holley filed an Affidavit in Support of Petitioner's Motion to Correct Errors, which included Holley's account of his post-conviction hearing and various assertions about events surrounding his trial. Holley now appeals.

## DISCUSSION AND DECISION

### I. Pro Se Litigants[3]

As stated above, Holley represented himself at the post-conviction level and is self-represented on appeal. At the outset, we note that a defendant or convicted person who proceeds pro se "'accepts the burdens and hazards incident to his position.'" Boykin v. State, 702 N.E.2d 1105, 1106 n.1 (Ind. Ct. App. 1998) (quoting Houston v. State, 553 N.E.2d 117, 118 (Ind. 1990)). "Pro se litigants without legal training are held to the same standard as trained counsel and are required to follow procedural rules." Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004). On appeal, pro se defendants "must comply with the appellate rules to have their appeal determined on the merits." Smith v. State, 822 N.E.2d 193, 203 (Ind. Ct. App. 2005).

### II. Standard of Review

In post-conviction proceedings, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Helton v. State, 907 N.E.2d 1020, 1023 (Ind. 2009); see also Ind. Post-Conviction Rule 1(5). Because the post-conviction court denied relief, Holley is appealing from a negative judgment and faces the rigorous burden of showing "that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the [post-conviction] court." Weatherford v. State, 619 N.E.2d 915, 917 (Ind. 1993).

---

[3] This section of the Appellee's Brief contained some inaccurate citations. For example, a case citation did not contain the quoted material for which it was cited. The inaccuracies appear to have been the potential result of "cutting and pasting." While we understand the pressure of time constraints, we caution counsel to be more conscientious in the future.

11

Post-conviction relief is not a substitute for a direct appeal. Holt v. State, 656 N.E.2d 495, 496 (Ind. Ct. App. 1995). Rather, post-conviction relief is reserved for those issues not known at the time of trial and direct appeal or for some reason not available to the defendant at that time. Id. A petitioner seeking post-conviction relief must show that the issues raised were unascertainable at the time of trial and direct appeal or the allegations arising therefrom are waived. Id. Furthermore, issues which have been raised and adjudicated on direct appeal are res judicata and not subject to consideration for post-conviction relief. Id.

### III. The Trial Transcript

Holley contends that the post-conviction court erred when it refused to admit Holley's trial transcript into evidence at the October 1, 2009 hearing. The admission or exclusion of evidence is within the post-conviction court's sound discretion and we will defer to the post-conviction court absent an abuse of that discretion. Conner v. State, 711 N.E.2d 1238, 1258 (Ind. 1999).

Although not directly on point, we think that Graham v. State, 941 N.E.2d 1091 (Ind. Ct. App. 2011), clarified on reh'g, 947 N.E.2d 962 (Ind. Ct. App. 2011), is instructive here. Graham alleged, in part, that he received ineffective assistance of trial counsel. Id. at 1096. On appeal from Graham's denial of post-conviction relief, the State argued that Graham had failed to introduce the trial record into evidence despite the longstanding rule requiring that the trial record be introduced at a post-conviction hearing because the court was not permitted to take judicial notice of it. Id. at 1097.

12

A panel of this Court noted that at the post-conviction hearing, Graham, who was representing himself, notified the post-conviction court that he had brought the trial record with him. Id. With respect to portions of the transcript that Graham planned to rely upon, the post-conviction court stated, "I believe we can probably get that . . . from the Superior Court records." Id.

The trial record was not introduced into evidence and, consequently, not transmitted to this Court on appeal. Id. Instead, the post-conviction court essentially took judicial notice of the trial court record, which the panel reiterated was improper at that time. Id. Additionally, the Graham Court recognized that Graham failed to insist that the material he brought be admitted into evidence, but nevertheless determined that

> if a party in a PCR proceeding provides the original trial record (or a part thereof) to the PCR court, the PCR court should proactively ensure that the record is officially entered into evidence as an exhibit, so that the trial record is transmitted to this court in the event of an appeal and to avoid claims of waiver for failing to submit the trial record to the PCR Court. Otherwise, there is the danger of converting a procedural technicality into a trap for unsuspecting litigants, which we emphatically discourage.

Id. (emphasis added).

On rehearing, the panel addressed the State's concerns that its holding placed the burden on post-conviction courts to locate evidence mentioned by a litigant, but not supplied to the post-conviction court, and then enter it into the record. Graham v. State, 947 N.E.2d 962, 964 (Ind. Ct. App. 2011). The Graham Court alleviated these concerns and clarified that:

13

if a pro se PCR petitioner comes to court bearing a record, including a transcript or other documents, that he or she wants to use in support of his or her petition, the PCR court should ensure that the record is introduced into evidence rather than indicating that the record could be obtained by other means, which is what occurred here.

Id. The Graham Court also distinguished that case from other cases in which the post-conviction petitioner did not attempt to introduce any part of the trial record at the post-conviction hearing. Id. at 965 (citing Evans v. State, 809 N.E.2d 338 (Ind. Ct. App. 2004); Mitchell v. State, 946 N.E.2d 640 (Ind. Ct. App. 2011)).

As discussed above, Holley offered the trial record into evidence at the July 2 hearing. This record included the transcript and the pretrial and defense exhibits. The State asked permission to examine the documents and noted that although the record contained the certificate asserting that it was the true and accurate transcript, it was missing a seal. The post-conviction court ruled that "over objection of the state, [the court] will admit the record of proceedings into evidence." Tr. p. 3 (emphasis added).

Then, at the October 1 hearing, while conducting direct examination of Webber, Holley referred to the trial record as Exhibit 1, requested that it be entered, and informed the post-conviction court that the trial record had been admitted at the July 2 hearing. Tr. p. 25.

At this point, the State interjected that it disagreed that the trial record had been admitted or that any evidence had been admitted. The post-conviction court determined that it was not admitted at the July 2 hearing, but only "submitted." Id. After examining the record, the State quickly objected on the grounds that it did not have a stamp and

14

further pointed out that the post-conviction court could not take judicial notice of its contents. Id. at 26.

Holley explained that the trial record was the one given to him by the public defender's office. Indeed, per an October 31, 2006 Order issued by this Court, the Office of the Public Defender was ordered to provide Holley with a copy of the trial record. And for this reason, on February 18, 2009, this Court denied Holley's verified motion to withdraw the trial court record for use in post-conviction proceedings – he had already been provided a copy.

Under these circumstances, it appears that the post-conviction court was confused regarding whether or not the trial record had been admitted; however, our review of the post-conviction record indicates that the trial court record was indeed admitted at the July 2 hearing. This fact distinguishes this case from Graham, inasmuch as the trial record was never admitted in Graham, which bolsters our conclusion that error was committed in the instant case. And, although likely unintentional, the post-conviction court converted a procedural technicality into a trap for an unsuspecting litigant, something this Court seeks to deter. Furthermore, in light of the fact that post-conviction hearings are conducted without a jury, the possibility that the post-conviction court would rely on improper evidence or become confused by the issues is diminished.

Moreover, we cannot say that removing the trial record from evidence did not prejudice Holley. Specifically, Holley essentially asked for several continuances because he did not have the trial record to prove the allegations in his petition such as the

15

ineffective assistance of trial counsel.  Consequently, we conclude that this case should be remanded for a new post-conviction hearing.[4]

The judgment of the post-conviction court is reversed and the cause is remanded for a new hearing.

KIRSCH, J., and BROWN, J., concur.

---

[4] In light of our conclusion that Holley is entitled to a new hearing on the merits of his petition for post-conviction relief, we need not address Holley's other allegations of error.